No. 3-02-0382

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2004

PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

RENE MARTINEZ,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of the 12th Judicial Circuit Will County, Illinois

No. 93-CF-912

Honorable Daniel J. Rozak,

Judge, Presiding

MODIFIED UPON DENIAL OF PETITION FOR REHEARING

JUSTICE LYTTON delivered the opinion of the court:

Defendant was charged with two counts of murder.  At trial, he was forced to wear an electronic stun belt.  He objected and asked the court to have the belt removed.  The court refused, but failed to make findings supporting its decision as required by 
People v. Boose
, 66 Ill. 2d 261 (1977).  We reverse, finding that the court’s failure to consider the 
Boose
 requirements amounted to a denial of defendant’s due process rights.

Defendant, Rene Martinez, was charged with two counts of murder.  Pursuant to the Will County Sheriff’s "standard operating procedure," he was forced to wear an electronic stun belt in court. The belt is worn around the waist and has prongs that are attached to the wearer over the left kidney region.  These prongs are powered by two nine volt batteries.  The belt is activated by remote control, and upon activation, delivers an eight second, 50,000 volt shock that cannot be stopped.  The shock often knocks its wearer down, incapacitating the person for up to 45 minutes.  Activation of the belt may also cause immediate and uncontrollable defecation and urination. 

Before and during the trial, defendant objected to wearing the belt: "[the guards] just told me I have to wear some type of belt that’s going to make me defecate and urinate on myself. ***  I am scared as heck wearing this to me. *** [I]f I have to wear it, I don’t want to be in this courtroom. *** [T]ry me in absentia."   

The trial court found that defendant had done nothing to justify use of the belt, 
but explained that he generally required defendants accused of rape and murder or attempt murder to wear the belt.  When the prosecutor and deputy informed him that it was the sheriff’s policy that all custodial defendants charged with a felony wear the belt, the judge then stated that he would notbut refused to  remove it the belt because he did not want to disrupt the sheriff’s standard operating procedure.  The court added stated that it would not 
"tell the Sheriff how to run his jail."  The judge elaborated: "[jail officials] tell me now that it is standard operating procedure, even if it’s a [sic] 80-year old lady who is in custody with the cuffs off and going to trial on a Class 4 Felony, it’s worn in court now.  And I am not going to change the Sheriff’s Department’s policy."

The trial commenced, and defendant was convicted.  He was sentenced to 60 years imprisonment.

Defendant argues that he was denied a fair trial because the trial court failed to apply the appropriate test for shackling a defendant in the courtroom. The state responds that since defendant was not prejudiced, any error by the court was harmless.

Shackling of the accused should be avoided if possible because: (1) it tends to prejudice the jury against the accused; (2) it restricts his ability to assist his counsel during trial; and (3) it offends the dignity of the judicial process. 
People v. Boose
, 66 Ill. 2d 261, 265 (1977). The decision to shackle a defendant is left to the discretion of the trial judge, and he may select the physical restraints most suitable in light of all the circumstances. 
Boose
, 66 Ill. 2d at 266.  An accused should never be placed in restraints in the presence of the jury "unless there is a showing of a manifest need for such restraints." 
Boose
, 66 Ill. 2d at 265-66. 

The trial judge must state for the record his reasons for allowing the defendant to remain shackled and must give the defendant's attorney an opportunity to present reasons why the defendant should not be shackled. 
People v. Buss
, 187 Ill. 2d 144, 216 (1999).  Factors to be considered by the trial judge in making this determination include:

the seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature  and physical security of the courtroom; and the adequacy and availability of alternative remedies.  
Boose
, 66 Ill. 2d at 265-66.

Courts must consider these criteria when deciding whether it is appropriate to shackle a defendant in the presence of the jury.  If the factors weigh in favor of shackling, then the defendant may be restrained.  See 
Buss
, 187 Ill. 2d at 217-18.  Failure to properly consider the 
Boose
 factors is a due process violation.  
Boose
, 66 Ill. 2d at 269.  A 
Boose
 analysis must be performed in bench trials as well.  
In re Staley
, 67 Ill. 2d 33, 37-38 (1977) 

The court in this case never made a 
Boose
 analysis; it simply deferred to the judgment of the sheriff. The trial court stated that it did not matter what specific circumstances the individual presented,; any defendant in custody and charged with a felony had to wear the belt. This refusal to consider each defendant’s circumstances individually directly contravenes our supreme court’s holding in 
Boose
. 

Before shackling a defendant, 
Boose
 requires that the trial court consider various factors, state for the record its findings on those factors and give defendants an opportunity to explain why  they should not be shackled.  Here, the trial court abdicated that responsibility by allowing the sheriff to make the determination. The court indicated that it had no choice because of the sheriff’s policy.  We believe the opposite is true. The court must rigorously control its own courtroom procedures, and, consistent with the mandates of due process, protect the rights of the parties and the public.  By adhering to the sheriff’s draconian shackling policy without first evaluating its constitutionality, the trial court failed to protect defendant’s right to a fair trial. 

The State argues that the court’s failure to analyze the 
Boose
 factors was harmless error.  However, 
Boose
 itself provides that no matter how "strong the evidence against an accused may be, a fair trial, in all its stages, is a fundamental requirement in a criminal prosecution and when such requirement is not met, it amounts to a denial of due process of law."  
Boose
, 66 Ill. 2d at 268. Forcing defendants to wear the electronic stun belt without first engaging in a case-by-case 
Boose
 analysis violates the right to a fair trial. Therefore, defendant must be granted a new trial. Because we are reversing and remanding defendant’s conviction for the reasons stated, we need not reach other issues raised in the appeal.  

The judgment of the circuit court of Will County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

MCDADE, J., specially concurring and SLATER, J., dissenting.

JUSTICE McDADE, specially concurs:

I completely concur with the analysis set forth in the Opinion and write separately only to state my belief that the use of stun belts such as the one used on defendant in this case should be completely prohibited in the courtrooms of Illinois.

In 
People v. Boose, 
66 Ill. 2d 261, 362 N.E.1d 303 (1977), the Illinois Supreme Court found that shackling should be avoided because it tends to prejudice the jury against the accused, restricts the ability of the accused to assist his counsel, and offends the dignity of the judicial process.  
Boose, 
66 Ill. 2d at 265, 362 N.E.2d at 305.  The court then set out a 13-factor test for assessing the "manifest need" for restraints in the presence of a jury.  
Boose, 
66 Ill. 2d at 265-66, 362 N.E.2d at 305.

The dissent argues that defendant must establish "actual prejudice," citing 
People v. Peeples
, 205 Ill. 2d 480 (2002).  However, 
Boose
 controls this issue and provides the trial court with a clearly defined analysis it must use before shackling a defendant in every case.  Nowhere does 
Boose
 require the defendant to show actual prejudice.  

Later that same year, in 
In re Staley, 
67 Ill. 2d 33, 364 N.E.2d 72 (1977), the court considered the propriety of handcuffing a juvenile during an adjudicatory hearing.  The State argued that the juvenile was not prejudiced because there was no jury to be affected by seeing him in handcuffs.  The court rejected that argument as too narrow, concluding instead that, even where there is no jury, any unnecessary restraint is impermissible because it hinders the defendant’s ability to assist his counsel, runs afoul of the presumption of innocence, and demeans both the defendant and the proceedings.  
Staley, 
67 Ill. 2d at 37-38, 364 N.E.2d at 73-74.

Shackling and handcuffing are benign forms of restraint when compared with 50,000 volts of electricity jolting through the human body for a period of 8 seconds.  If, as the supreme court has found, shackling and handcuffing can impede the defendant’s ability to assist in his defense, run afoul of the presumption of innocence, and demean the defendant and the judicial proceedings, how much more offensive to those rights is a restraint that, when activated, incapacitates the wearer for up to 45 minutes and causes immediate and uncontrollable defecation and urination?  I have 
no
 trouble at all understanding how a defendant, crippled by the fear that any movement, however harmless, might cause a guard, intentionally or accidentally, to electrify him with the above-described results, would be incapable of focusing on the trial and assisting counsel in presenting a meaningful defense.

Surely less draconian restraints have previously proven adequate to control even the most aggressive defendant.  Should there be one for whom more measured restraint is completely ineffective, however, it would, in my opinion, be less offensive to due process to have a defendant participate by closed circuit television or be tried 
in absentia
 than to have him or her writhing in agony (and feces and urine) on the courtroom floor.

I believe that fundamental principles of due process require a general ban on the use of stun belts in Illinois courts.

_________________________________________________________________

JUSTICE SLATER, dissenting:

_________________________________________________________________

I agree that the trial court erred when it allowed the stun belt to be used without determining whether the circumstances demonstrated a "manifest need" for such a restraint.  See 
Boose
, 66 Ill. 2d 261, 362 N.E. 2d 303.  A trial court abuses its discretion when it abdicates its decision-making authority regarding stun belt use to security personnel or law enforcement officials.  
People v. Mar
, 28 Cal. 4th 1201, 52 P. 3d 95, 124 Cal. Rptr. 2d 161 (2002); 
State v. Flieger
, 91 Wash. App. 236, 955 P. 2d 872 (1998).  As the Supreme Court of Kansas noted:

"It is the trial judge's responsibility to insure that the defendant receives a fair trial.  The sheriff is in control of the defendant outside the courtroom, but, within the courtroom, the obligation of courtroom security becomes a matter of shared concern.  While deference should be given to law enforcement officers with security obligations, the trial judge must retain complete control over the courtroom and exercise his or her discretion in finally determining if restraints are to be utilized."  
State v. Powell
, 274 Kan. 618, 636, 56 P.3d 189, 201 (2002).

I believe, however, that the use of stun belts may be justified in appropriate cases.  See D. Kendrick, 
United States v. Durham:  Are the Criminal Defendant's Rights at Trial Violated by Wearing a Stun Belt
?, 26 Am. J. Trial Advoc. 711, 715-16 (2003) (collecting cases where use of stun belts has been upheld); but see 
Wrinkles v. State
, 749 N.E.2d 1179 (Ind. 2001) (Indiana Supreme Court prospectively barred use of stun belts).  More importantly, I do not believe that the erroneous use of a stun belt always requires reversal of a defendant's conviction.

In 
People v. Peeples
, 205 Ill. 2d 480, 793 N.E.2d 641 (2002), the defendant raised an issue in his post-conviction petition regarding the fact that uniformed deputies sat behind him during his trial and a deputy sheriff escorted him to the witness stand and stood behind him while he testified.  After finding that such security measures were not inherently prejudicial, our supreme court stated that "once the challenged security measures are found not to be inherently prejudicial, the defendant bears the burden of affirmatively demonstrating actual prejudice as a result of the in-court security."  
Peeples
, 205 Ill. 2d  at 531, 793 N.E.2d at 672.

In this case I do not believe that the use of the stun belt was inherently prejudicial.  There is no indication that the jury was aware of its existence or that it had any effect on the decision in this case.  Despite the defendant's assertion that he was "scared as heck" of the belt, defendant does not explain how the belt allegedly impeded him in the ability to assist in his defense.  In my opinion, the defendant simply failed in meeting his burden of demonstrating actual prejudice.  I therefore dissent.